**EXHIBIT A**



SEALED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES<br>AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>THE HEARTLAND GROUP VENTURES,<br>LLC; HEARTLAND PRODUCTION AND<br>RECOVERY LLC; HEARTLAND<br>PRODUCTION AND RECOVERY FUND LLC;<br>HEARTLAND PRODUCTION AND<br>RECOVERY FUND II LLC; THE<br>HEARTLAND GROUP FUND III, LLC;<br>HEARTLAND DRILLING FUND I, LP;<br>CARSON OIL FIELD DEVELOPMENT FUND<br>II, LP; ALTERNATIVE OFFICE SOLUTIONS,<br>LLC; ARCOOIL CORP.; BARRON<br>PETROLEUM LLC; JAMES IKEY; JOHN<br>MURATORE; THOMAS BRAD PEARSEY;<br>MANJIT SINGH (AKA ROGER) SAHOTA; and<br>RUSTIN BRUNSON,<br><br>Defendants,<br><br>and<br><br>DODSON PRAIRIE OIL & GAS LLC;<br>PANTHER CITY ENERGY LLC; MURATORE<br>FINANCIAL SERVICES, INC.; BRIDY IKEY;<br>ENCYPHER BASTION, LLC; IGROUP<br>ENTERPRISES LLC; HARPRIT SAHOTA;<br>MONROSE SAHOTA; SUNNY SAHOTA;<br>BARRON ENERGY CORPORATION;<br>DALLAS RESOURCES INC.; LEADING<br>EDGE ENERGY, LLC; SAHOTA CAPITAL<br>LLC; and 1178137 B.C. LTD.,<br><br>Relief Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | 4-21CV-1310-0<br><br>No. _____<br><br>JURY DEMANDED<br><br>- FILED UNDER SEAL - |

# COMPLAINT

Plaintiff United States Securities and Exchange Commission ("SEC") alleges:

1.        This case concerns an oil and gas offering fraud conducted over three years. Between at least October 2018 and October 2021, The Heartland Group Ventures, LLC ("Heartland Group Ventures"), Heartland Production and Recovery LLC ("Heartland PAR"), and their principals, initially John Muratore ("Muratore") and Thomas Brad Pearsey ("Pearsey"), and later James Ikey ("Ikey") and Rustin Brunson ("Brunson"), have fraudulently raised approximately $122 million from more than 700 investors nationwide, purportedly for working over existing wells or drilling new wells in Texas, through five unregistered securities offerings—three debt funds and two equity funds—for which there was no applicable registration exemption. Over the course of the five offerings, Heartland Production and Recovery Fund LLC ("Debt Fund I"); Heartland Production and Recovery Fund II LLC ("Debt Fund II"); The Heartland Group Fund III, LLC ("Debt Fund III"); Heartland Drilling Fund I, LP ("Equity Fund I"); and Carson Oil Field Development Fund II, LP ("Equity Fund II"), the Heartland Defendants[1] spent only about half of the investor funds they raised on oil and gas projects, which collectively

---

[1] In this complaint, **"Heartland Entities"** means Defendants Heartland Group Ventures; Heartland PAR; Debt Fund I; Debt Fund II; Debt Fund III; Equity Fund I; and Equity Fund II; while **"Heartland Defendants"** or **"Heartland"** means the Heartland Entities in addition to Defendants Ikey, Muratore, Pearsey, and Brunson.

generated less than $500,000 in revenue. Beginning in at least 2019, the Heartland Defendants used investor funds to make more than $26 million in Ponzi payments to debt fund investors.

2.      The Heartland Defendants made material misrepresentations and omissions to investors regarding the oil and gas projects in offering documents for the five securities offerings. For example, they falsely told investors that certain oil wells were producing hundreds of barrels of oil a day, including wells that had yet to produce a single barrel of oil. They told investors the wells were operated by Texas oil and gas operators with experience dating back to 2003; those operator entities didn't even exist until 2017. The truth about the wells' lack of production and the operators' lack of experience, which the Heartland Defendants failed to research, was publicly available on websites for the Texas Railroad Commission and Texas Secretary of State, respectively. The Heartland Defendants and Defendant Alternative Office Solutions, LLC ("AOS"), which managed Heartland investor accounts, also made material misrepresentations and omissions to investors regarding the oil and gas projects in marketing materials for the five securities offerings, falsely representing production and reserves, among other things.

3.      Beginning in at least September 2019, Defendants Heartland Group Ventures, Ikey, and Brunson failed to disclose the majority ownership and control of Heartland Group Ventures by Ikey, who was convicted of

3

conspiracy to commit wire fraud in 2014. The Heartland Defendants entrusted

Ikey with investors' personal information, including their financial information.

4.       Between at least February 2019 and September 2021, the

Heartland Defendants directed a total of more than $54 million of Heartland

investors' money to Defendants Manjit Singh (aka "Roger") Sahota ("Sahota"),

ArcoOil Corp. ("ArcoOil"), and Barron Petroleum LLC ("Barron Petroleum")

(collectively, the "Sahota Defendants")[2] and a third Sahota entity, Relief

Defendant Dallas Resources Inc. ("Dallas Resources"), for projects involving

working over existing oil and gas wells or drilling new wells. The Heartland

Defendants entrusted the bulk of the money they spent on oil and gas well

projects to the Sahota Defendants and Dallas Resources despite receiving

numerous red flags regarding their use of investor funds and the projects,

including Sahota's repeated refusal to provide requested information about title,

project status, revenue, and costs.

5.       The Sahota Defendants and Dallas Resources used millions of

dollars in Heartland investor fund proceeds to purchase a private jet, a

helicopter, real estate in the Bahamas, and on other non-oil and gas

expenditures for themselves.

6.       The Sahota Defendants also made material misrepresentations to

Heartland, its investors, and persons who solicited prospective investors about

---

[2] In this complaint, **"Sahota Defendants"** means Defendants Sahota, ArcoOil, and
Barron Petroleum.

the existing and potential production of wells, including by providing periodic statements that reflected materially inflated or otherwise altered oil production revenues for certain wells and a reserve report that reflected a materially altered valuation for gas reserves. Defendant Sahota also made misrepresentations about projected production of a gas well that was being drilled to Heartland personnel, persons who solicited investors, and at least one investor who attended an April 2021 field trip to the drill site.

7.      The SEC sues to enjoin the Defendants' misconduct; to marshal and safeguard assets for the benefit of investors; to prevent further harm to investors; and to hold defendants accountable for their violations of the federal securities laws.

## I.      JURISDICTION AND VENUE

8.      The SEC brings this action under Section 20(b) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §77t(b)] and Sections 21(d) and 21(e) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§78u(d) and 78u(e)].

9.      This Court has jurisdiction over this action under Section 22 of the Securities Act [15 U.S.C. § 77v] and Section 27 of the Exchange Act [15 U.S.C. § 78aa and 28 U.S.C. § 1331].

10.     Venue is proper in this Court under Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Acts, practices, and courses of business constituting

violations alleged herein have occurred within the jurisdiction of the United States District Court for the Northern District of Texas and elsewhere.

11.     Defendants directly and indirectly made use of the means and instrumentalities of interstate commerce and of the mails in connection with the acts, practices, and courses of business alleged here, and will continue to do so unless enjoined.

## II.     DEFENDANTS

12.     **Defendant The Heartland Group Ventures, LLC ("Heartland Group Ventures")** is a Texas limited liability company formed August 26, 2019. Its principal place of business is in Fort Worth, Texas. Heartland Group Ventures was owned and controlled by Defendants Muratore and Pearsey between approximately August 26, 2019 and September 13, 2019, when it was transferred 85% to Relief Defendant Encypher Bastion, LLC, which is owned by Defendant Ikey and his wife, and 15% to Brunson Projects, LLC, which is owned by Defendant Brunson. Since September 13, 2019, Ikey and Brunson have controlled Heartland Group Ventures, with the assistance of Muratore and Pearsey.

13.     **Defendant Heartland Production and Recovery LLC ("Heartland PAR")** is a Delaware limited liability company formed October 2, 2018. Its principal place of business was in Mansfield, Texas. Heartland PAR was owned and controlled by Defendants Muratore and Pearsey between

approximately October 2018 and September 13, 2019, when it was transferred 85% to Relief Defendant Encypher Bastion, LLC and 15% to Brunson Projects, LLC, and was controlled by Defendants Ikey and Brunson.

14.    **Defendant Heartland Production and Recovery Fund LLC ("Debt Fund I")** is a Delaware limited liability company formed October 31, 2018 with Defendant Heartland PAR as its managing partner. Its principal place of business was in Mansfield, Texas. Defendants Muratore and Pearsey controlled Debt Fund I between approximately October 2018 and September 13, 2019, when its operations were transferred to Heartland Group Ventures.

15.    **Defendant Heartland Production and Recovery Fund II LLC ("Debt Fund II")** is a Delaware limited liability company formed January 8, 2019 with Defendant Heartland PAR as its managing partner. Its principal place of business was in Mansfield, Texas. Defendants Muratore and Pearsey controlled Debt Fund II between approximately January 2019 and September 13, 2019, when it was transferred 85% to Relief Defendant Encypher Bastion, LLC and 15% to Brunson Projects, LLC, and was controlled by Defendants Ikey and Brunson.

16.    **Defendant Heartland Drilling Fund I, LP ("Equity Fund I")** is a Delaware limited partnership formed April 15, 2019 with Defendant Heartland PAR as its managing partner. Its principal place of business is in Fort Worth, Texas. Defendants Muratore and Pearsey controlled Equity Fund I between

7

approximately April 2019 and September 13, 2019, when it was transferred 85%

to Relief Defendant Encypher Bastion, LLC and 15% to Brunson Projects,

LLC. Since September 13, 2019, Defendants Ikey and Brunson have controlled

Equity Fund I, with the assistance of Muratore and Pearsey.

17.    **Defendant The Heartland Group Fund III, LLC ("Debt Fund**

**III")** is a Texas limited liability company formed September 12, 2019 with

Defendant Heartland Group Ventures as its managing partner. Its principal

place of business is in Fort Worth, Texas. Defendants Ikey and Brunson have

controlled Debt Fund III since its formation, with the assistance of Defendants

Muratore and Pearsey.

18.    **Defendant Carson Oil Field Development Fund II, LP ("Equity**

**Fund II")** is a Texas limited partnership formed July 1, 2020 with Defendant

Heartland Group Ventures as its managing partner. Its principal place of

business is in Fort Worth, Texas. Defendants Ikey and Brunson have controlled

Equity Fund II since its formation, with the assistance of Defendants Muratore

and Pearsey.

19.    **Defendant Alternative Office Solutions, LLC ("AOS") (fka**

**Benedict Offport, LLC and Pura Jade USA, LLC)** is a Texas limited liability

company formed as Pura Jade USA, LLC in 2016. Its principal place of

business is in Mansfield, Texas. Its name was changed to Benedict Offport, LLC

in September 2018, and then to AOS in June 2020. According to corporate

records, its members were Texas company Jotiva, LLC and Panamanian entity Chanan Global Ventures from at least October 2018 until February 26, 2020, when Relief Defendant Bridy Ikey became the sole managing member on corporate records. Since at least October 2018, Defendant Ikey has owned and controlled AOS along with his wife. AOS managed Heartland's investor accounts and communications with investors and persons and entities that solicited investors.

20.     **Defendant ArcoOil Corp. ("ArcoOil")** is a Texas limited liability company formed as "Arcooil Corp" on May 25, 2017. Its principal place of business is in Graham, Texas. Since at least October 2018, ArcoOil has been owned and controlled by Defendant Sahota, solely or with family members. Sahota's wife, Relief Defendant Harprit Sahota, was President of ArcoOil from 2018 until May 22, 2021, when his son, Relief Defendant Sunny Sahota, became President. "Manjit Sahota" has been listed as its President since September 9, 2021, purportedly effective as of July 1, 2021. "Roger Sahota" has been listed as ArcoOil's registered agent since June 11, 2021. ArcoOil is an operator registered with the Texas Railroad Commission and is the operator for the two wells described in the Debt Fund I offering documents.

21.     **Defendant Barron Petroleum, LLC ("Barron Petroleum")** is a Texas limited liability company formed September 11, 2017. Its principal place of business is in Graham, Texas. Since at least October 2018, Barron Petroleum

has been owned and controlled by Defendant Sahota, solely or with family members. "Roger Sahota" has been listed as its registered agent since formation, and "Manjit Sahota" has been listed as a managing member since April 23, 2019. Barron Petroleum is an operator registered with the Texas Railroad Commission and is the operator for wells described in the Debt Fund II and III and Equity Fund I and II offering documents.

22.    **Defendant Rustin Brunson**, age 36, resides in Mansfield, Texas. Since September 13, 2019, Brunson has owned 15% of Defendant Heartland Group Ventures through his company, Brunson Projects LLC; has controlled Defendants Heartland Group Ventures, Debt Funds I, II, and III, and Equity Funds I and II with Defendant Ikey, with assistance from Defendants Muratore and Pearsey; and has had a 15% profits interest in Heartland Group Ventures. Brunson has served as fund manager of Debt Fund III and Equity Fund I since September 13, 2019, and of Equity Fund II since approximately July 2020. Brunson is an attorney licensed to practice law in Texas. He was outside counsel to Defendant Heartland PAR from about April to September 13, 2019, when he became Heartland Group Venture's general counsel.

23.    **Defendant James Ikey ("Ikey")**, age 55, resides in Mansfield, Texas. Since September 13, 2019, Ikey and his wife, Relief Defendant Bridy Ikey, have owned 85% of Defendant Heartland Group Ventures through their company, Relief Defendant Encypher Bastion, LLC. Since September 13, 2019,

Ikey has controlled Defendants Heartland Group Ventures, Debt Funds I, II, and III, and Equity Funds I and II with Defendant Brunson, with assistance from Defendants Muratore and Pearsey, and has had a 55% profits interest in Heartland Group Ventures. Ikey and his wife have owned and controlled Defendant AOS and Relief Defendant Encypher Bastion since October 2018 and Relief Defendant IGroup Enterprises LLC since October 2019. In April 2014, Ikey pleaded guilty to conspiracy to commit wire fraud in connection with a mortgage fraud scheme.

24. **Defendant Thomas "Brad" Pearsey**, age 44, resides in Indianapolis, Indiana. Pearsey co-founded Heartland PAR with Defendant Muratore. Between approximately October 2018 and September 13, 2019, Muratore and Pearsey each owned and controlled 50% of Defendants Heartland PAR and Heartland Group Ventures, and they shared control of Defendants Debt Funds I and II and Equity Fund I. Since September 13, 2019, Pearsey has retained a 12.5% profits interest in Heartland, acted as a consultant to Heartland Group Ventures, Debt Fund III, and Equity Funds I and II, and received compensation from Heartland, including 1% of incoming investor funds and a consulting fee.

25. **Defendant John Muratore**, age 62, resides in Huntington Beach, California. Muratore co-founded Heartland PAR with Defendant Pearsey. Between approximately October 2018 and September 13, 2019, Muratore and

11

Pearsey each owned and controlled 50% of Defendants Heartland PAR and Heartland Group Ventures, and they shared control of Defendants Debt Funds I and II and Equity Fund I. Since September 13, 2019, Muratore has retained a 12.5% profits interest in Heartland, acted as a consultant to Heartland Group Ventures, Debt Fund III, and Equity Funds I and II, and received compensation from Heartland, including 1% of incoming investor funds. Muratore owns and controls Relief Defendant Muratore Financial Services Inc., through which he received Heartland-related compensation.

26.     **Defendant Manjit (aka "Roger") Sahota**, age 67, is a Canadian citizen and resides in or around Eldorado, Texas. Since at least October 2018, Sahota has owned and controlled Defendants ArcoOil and Barron Petroleum and Relief Defendant Dallas Resources, solely or with his family. He is the current registered agent for ArcoOil, Barron Petroleum, Dallas Resources, and Relief Defendants Leading Edge Energy LLC and Sahota Capital LLC under the name "Roger Sahota," and he is the President of ArcoOil and the managing member of Barron Petroleum, Dallas Resources, Leading Edge, and Sahota Capital under the name "Manjit Sahota." Each of Sahota and his sons, Relief Defendants Sunny and Monrose Sahota, is a 33.3% owner of Relief Defendant Barron Energy.

### III.   RELIEF DEFENDANTS

27.   **Relief Defendant Dodson Prairie Oil & Gas LLC ("Dodson Prairie")** is a Texas limited liability company formed May 4, 2021 with its principal place of business in Fort Worth, Texas, and Defendant Heartland Group Ventures as its manager. Dodson Prairie is an operator registered with the Texas Railroad Commission and is the operator for certain of Heartland's oil and gas assets, which were purchased with Heartland investor funds.

28.   **Relief Defendant Panther City Energy LLC ("Panther City")** is a Texas limited liability company formed December 8, 2020 with its principal place of business in Fort Worth, Texas, and Defendant Heartland Group Ventures as its manager. Panther City is an operator registered with the Texas Railroad Commission and is the operator for certain of Heartland's oil and gas assets, which were purchased with Heartland investor funds.

29.   **Relief Defendant Muratore Financial Services Inc. ("Muratore Financial")** is a California company formed August 7, 2017 with its principal place of business in Huntington Beach, California. Defendant Muratore owns and controls Muratore Financial, through which he received Heartland compensation derived from investor funds.

30.   **Relief Defendant Bridy Ikey ("Bridy Ikey")**, age 50, resides in Mansfield, Texas. Since September 13, 2019, Bridy Ikey and her husband, Defendant Ikey, have owned 85% of Defendant Heartland Group Ventures

13

through their company, Relief Defendant Encypher Bastion. Since February 26, 2020, corporate records have reflected Bridy Ikey as the sole managing member of Defendant AOS and Encypher Bastion. Defendant Ikey has owned and controlled both companies since October 2018 along with his wife. Ikey and Bridy Ikey have also owned and controlled Relief Defendant IGroup Enterprises LLC since October 2019.

31.     **Relief Defendant Encypher Bastion, LLC ("Encypher Bastion")** is a Texas limited liability company formed August 14, 2017. Its principal place of business is in Mansfield, Texas. Since September 13, 2019, it has owned 85% of Defendants Heartland Group Ventures, Debt Funds II and III, and Equity Funds I and II. On corporate records, its members were Texas company Jotiva LLC and Panamanian entity Encrypt Fortress Corp. between September 2019 and February 26, 2020, after which Relief Defendant Bridy Ikey became the sole managing member on corporate records. Since at least October 2018, Defendant Ikey has owned and controlled Encypher Bastion along with his wife. Since October 2019, Ikey has received Heartland compensation derived from investor funds through Encypher Bastion.

32.     **Relief Defendant IGroup Enterprises LLC ("IGroup")** is a Texas limited liability company formed October 9, 2019 with its principal place of business in Mansfield, Texas. Defendant Ikey and Relief Defendant Bridy

Ikey own and control IGroup, through which they received Heartland compensation derived from investor funds.

33.     **Relief Defendant Barron Energy Corporation ("Barron Energy")** is a Wyoming limited liability company formed May 20, 2021 with its principal place of business in Graham, Texas. Defendant Sahota and his sons, Relief Defendants Monrose and Sunny Sahota, each own 33.3% of it. Barron Energy received funds from Defendants ArcoOil and Barron Petroleum and from Relief Defendant Dallas Resources, all of which received Heartland investor funds.

34.     **Relief Defendant Dallas Resources, Inc. ("Dallas Resources")** is a Texas limited liability company formed as "Dallas Resources INC" on August 22, 2018. Its principal place of business is in Graham, Texas. Since at least October 2018, Dallas Resources has been owned and controlled by Defendant Sahota, solely or with family members. Sahota's wife, Relief Defendant Harprit Sahota, was a Director from formation until June 2021, purportedly effective as of December 31, 2020. Sahota's son, Relief Defendant Sunny Sahota, was the managing member between March 2019 and September 15, 2021, when "Manjit Sahota" became managing member, purportedly effective as of July 1, 2021. "Roger Sahota" has been its registered agent since February 2019. Dallas Resources received about $10.6 million in Heartland investor funds.

35.    **Relief Defendant Leading Edge Energy, LLC ("Leading Edge")**
is a Texas limited liability company formed May 24, 2017, and it has been
owned and controlled by Defendant Sahota, solely or with family members. Its
principal place of business is in Graham, Texas. "Roger Sahota" is its registered
agent, and "Manjit Sahota" is its managing member. Sahota's wife, Relief
Defendant Harprit Sahota, was also a managing member beginning in March
2018. Leading Edge is an operator registered with the Texas Railroad
Commission and is described as an operator in the Debt Fund I offering
memorandum. It received funds from Defendant ArcoOil and Relief Defendant
Dallas Resources, which received Heartland investor funds.

36.    **Relief Defendant Sahota Capital LLC ("Sahota Capital")**,
which is also known as "Sahota Capital Inc." and "Sahota Capital Corp.," is a
Texas limited liability company formed January 30, 2020, and it has been
owned and controlled by Defendant Sahota, solely or with family members. Its
principal place of business is in Graham, Texas. "Roger Sahota" is its registered
agent, and "Manjit Sahota" is a manager. Sahota's son, Relief Defendant Sunny
Sahota, is also a manager. Sahota Capital received funds originating from Relief
Defendant Dallas Resources, which received Heartland investor funds.

37.    **Relief Defendant 1178137 B.C. LTD.** is a Canadian entity
formed September 3, 2018 with its principal place of business in Surrey, British
Columbia. Sahota's son, Monraaj Sahota, is its Director. Funds were

transferred to 1178137 B.C. LTD. from Defendants ArcoOil and Barron Petroleum and Relief Defendant Dallas Resources, all of which received Heartland investor funds. In approximately August 2021, title documents were recorded in several Texas counties purporting to transfer leases for Heartland-Sahota projects to 1178137 B.C. LTD., and Monraaj Sahota signed documents on its behalf accepting those transfers.

38.     **Relief Defendant Harprit Sahota**, age 64, is Defendant Sahota's wife and resides in or around Eldorado, Texas. Harprit Sahota was listed as a managing member of Defendant ArcoOil between approximately March 2018 and June 2021 and of Defendant Barron Petroleum between its formation in September 2017 and June 2021, and as a Director of Relief Defendant Dallas Resources between August 2018 and June 2020. She is a signatory to two of the Dallas Resources bank accounts.

39.     **Relief Defendant Monrose Sahota**, age 36, is Defendant Sahota's son and resides in or around Eldorado, Texas. Monrose Sahota attended a Heartland event and was present at field trips to well sites attended by persons who solicited Heartland investors. Monrose Sahota is a signatory to the bank accounts of Defendants ArcoOil and Barron Petroleum and Relief Defendants Dallas Resources, Barron Energy, and Sahota Capital. He is a 33.3% owner of Relief Defendant Barron Energy.

40.   **Relief Defendant Sunny S. Sahota**, age 38, is Defendant Sahota's son and resides in or around San Angelo, Texas. Sunny Sahota was present at field trips to well sites attended by persons who solicited Heartland investors. Sunny was President of Defendant ArcoOil from approximately June to September 2021, a managing member of Defendant Barron Petroleum from approximately August 2018 to September 2021, and a managing member of Relief Defendant Dallas Resources from approximately March 2019 to September 2021. He is a 33.3% owner of Relief Defendant Barron Energy. Sunny Sahota is a signatory to bank accounts of ArcoOil, Barron Petroleum, Dallas Resources, Barron Energy, and Sahota Capital.

## IV.   FACTS

### Muratore and Pearsey Form Heartland PAR

41.   Between approximately late 2017 through the fall of 2018, Ikey, Muratore, and Pearsey offered and sold promissory notes to investors issued by a company called Texas International Energy Production Inc. ("TIEP"), a Mansfield, Texas company that raised investor funds, purportedly to perform workovers of old wells in Texas. Ikey also provided back office services for TIEP.

42.   In October 2018, after TIEP stopped selling promissory notes, Muratore and Pearsey formed their own company to raise investor funds for well workovers with TIEP in Texas: Heartland PAR, which they jointly owned

and controlled. Neither Muratore nor Pearsey had any experience running an oil and gas company.

43.     In approximately October 2018, Muratore and Pearsey hired Ikey and his company, AOS, to open and maintain Heartland investor accounts, obtain executed investment subscription agreements from investors, handle investor funds, create marketing materials, distribute marketing materials and offering documents to persons who solicited Heartland investors, and track payments owed to investors and persons and entities who solicited investors, among other responsibilities. Ikey and AOS performed these and other responsibilities for Heartland PAR and its securities offerings from approximately October 2018 to September 13, 2019. When they hired Ikey and AOS, Muratore and Pearsey were aware that Ikey had a prior "felony" or "legal issue," respectively. They nonetheless entrusted Ikey with investors' financial information and personal identifiable information.

44.     From approximately October 2018 through September 13, 2019, Heartland PAR, AOS, Muratore, Pearsey, and Ikey raised approximately $29 million from approximately 262 investors in Debt Fund I, Debt Fund II, and Equity Fund I, claiming for each fund an exemption to registration under Rule 506(c) of Regulation D of the Securities Act.

### Debt Fund I

45.     In approximately October 2018, Muratore and Pearsey directed

the drafting of Debt Fund I offering documents consisting of a private

placement memorandum (or "PPM") dated October 23, 2018 ("Debt Fund I

PPM"). Muratore and Pearsey reviewed the Debt Fund I PPM, and Ikey

suggested revisions to it, before Ikey and AOS distributed the final PPM to

"finders" for use with prospective investors. The PPM represented that Pearsey

was the manager of Debt Fund I and the owner and manager of Heartland

PAR, the managing entity of Debt Fund I.

46.     Even before the Debt Fund I PPM had been completed, Heartland

PAR, Muratore, and Pearsey began to solicit Debt Fund I investors using

finders with whom they had pre-existing relationships. They paid the finders,

who were typically insurance agents or financial advisors, up to 8% of the Debt

Fund I investor funds they raised.

47.     Pearsey and Muratore did not inquire as to the finders'

disciplinary history before the finders offered and sold the investments. At least

two of the finders that Heartland PAR compensated for soliciting Debt Fund I

investor funds had been permanently barred by the Financial Industry

Regulatory Authority ("FINRA") from associating with any member firm,

making those finders "bad actors," which precluded Heartland from relying on

any Regulation D exemptions.

agreements, and on finder submissions of undated form letters purporting to certify investor accredited status. They made no further inquiry upon receipt of these letters, many of which lacked contact information for follow-up purposes.

53.     Between approximately October and December 2018, Heartland PAR, AOS, Muratore, Pearsey, and Ikey raised about $6 million, the stated target for Debt Fund I, from approximately 69 investors who were solicited by approximately 27 finders.

54.     Beginning in early November 2018, Heartland PAR transferred approximately $5 million from the Debt Fund I bank accounts to an entity related to TIEP for the two purportedly "proven" well workover projects described in the Debt Fund I PPM. Neither well had been completed at this time.

55.     Between approximately November 2018 and February 2019, TIEP paid Heartland PAR "production payments" on the two wells totaling approximately $227,000, after which TIEP made no further payments on the two wells.

### Debt Fund II

56.     In early 2019, after Debt Fund I met its stated $6 million target, Heartland's finders continued to raise investor funds using the Debt Fund I PPM.

57.     Muratore and Pearsey began negotiating with TIEP's CEO for a
well workover project in Palo Pinto County, Texas (the "Conway lease") and
directed the drafting of a new PPM describing that project. The PPM, dated
January 7, 2019, offered 1-year and 2-year promissory notes for Debt Fund II
generating 8.5% and 9% monthly interest, respectively, with a stated target of
raising up to $25 million ("January 2019 Debt Fund II PPM").

58.     Muratore and Pearsey reviewed the January 2019 Debt Fund II
PPM and Ikey revised a draft before AOS distributed the final version to finders
for use in soliciting prospective investors. The PPM represented that Pearsey
was the owner and manager of Debt Fund II and the owner and operator of
Heartland PAR, the managing entity of Debt Fund II.

59.     The January 2019 Debt Fund II PPM stated that 20% of offering
proceeds would be used for fees and expenses, with the rest to be used "for the
purchase of working interests in proven oil and gas wells." It did not disclose
that investor funds would be used to pay interest or principal to other investors.

60.     The January 2019 Debt Fund II PPM described workovers of ten
wells on the Conway lease in Palo Pinto County, Texas. It falsely listed the
wells' operator as Texas Exploration, Inc., or "TE," and falsely displayed the
wells' "[c]urrent total production" as 760 barrels per day. Muratore and Pearsey
did not research these wells or operator on the publicly available Texas Railroad
Commission website, which showed that Texas Exploration, Inc. was not a

registered operator and operated no wells. Barron Petroleum is an operator of wells on the Conway lease, but none of those wells had been completed or had produced any oil or gas as of January 2019.

61.     Heartland's finders used the January 2019 Debt Fund II PPM in their solicitations of prospective investors for approximately four months to raise approximately $8.4 million in funds from Debt Fund II investors, even though Heartland never consummated the Conway lease deal with TIEP or TE. Heartland commingled the funds it raised from these Debt Fund II investors with Debt Fund I and Heartland PAR funds.

62.     By approximately January 2019, Muratore and Pearsey had met Sahota. Sahota pitched the same Conway lease deal to them but for a cheaper price, claiming he owned the lease and TIEP was just a middleman, as well as other well projects. On approximately February 4, 2019, Muratore and Pearsey made a down payment to Sahota, paying $500,000 to Sahota's company, Dallas Resources, using commingled Debt Fund I, Debt Fund II, and Heartland PAR funds. At the time of this down payment, Muratore and Pearsey had not performed any due diligence into Sahota or his companies.

63.     After making this down payment, Muratore and Pearsey asked a retired mechanical engineer they had hired to assist them in evaluating TIEP's proposals to evaluate Sahota's proposals. The engineer did not visit the Sahota

project well sites until mid-2019, and Muratore and Pearsey terminated the engineer's work in approximately August 2019.

64.     Between February and April 2019, Heartland PAR, Muratore, and Pearsey entered into three deals with Sahota: (1) a well workover project on the Conway lease for $3 million; (2) a well workover project in Schleicher County, Texas (the "Wolfcamp lease") for $8 million; and (3) drilling new wells in Val Verde County, Texas (the "Carson lease") for $5.5 million. For all three deals, Sahota and Heartland were to split costs and profits 51/49.

65.     Beginning in early 2019, at Pearsey's prompting, Heartland PAR, Muratore, and Pearsey shifted from raising investor funds using finders to a "feeder fund" model, in which a "feeder fund manager"—an individual, typically an insurance agent or financial advisor, and often someone who had previously acted as a Heartland finder—solicited prospective investors through a new Texas company formed for the purpose of soliciting investments in Heartland. Heartland provided feeder funds with Heartland PPMs for its offerings as well as feeder fund PPMs, which were prepared by Heartland and mirrored Heartland's offering documents, for use with prospective investors.

66.     Under Heartland's feeder fund model, an investor executed investment paperwork with, and gave their funds to, a feeder fund. The feeder fund entered into a mirror transaction with Heartland and sent most of the investor funds to Heartland, keeping a cut, generally up to 8% of investor funds

raised, as their compensation at Heartland's direction. Heartland PAR and AOS told feeder fund managers that the feeder funds were accredited investors, but Heartland PAR, AOS, Muratore, Pearsey, and Ikey made no inquiry into whether the feeder funds qualified as accredited investors. Numerous feeder funds—and the investors they solicited—were unaccredited.

67.     As for Debt Fund II investors who were solicited by finders, Heartland PAR, AOS, Muratore, Pearsey, and Ikey continued to rely on investors to self-report their accredited status by checking a box on their investor agreements, and on finder submissions of undated form letters purporting to certify investor accredited status. They typically made no further inquiry upon receipt of these letters, many of which lacked contact information for follow-up purposes.

68.     In approximately April 2019, Muratore and Pearsey directed the drafting of a new Debt Fund II PPM describing the three projects with Sahota. This PPM, dated April 30, 2019 ("April 2019 Debt Fund II PPM"), offered 1-year and 2-year promissory notes generating 8.5% and 9% monthly interest, respectively, with a stated target of raising up to $25 million. Ikey received a draft and Pearsey reviewed the PPM before AOS sent it to finders and feeder fund managers, along with feeder fund PPMs that were prepared by Heartland and mirrored the April 2019 Debt Fund II PPM, for use in soliciting prospective investors.

69.     The April 2019 Debt Fund II PPM represented that Muratore and Pearsey were the owners and managers of Debt Fund II and of Heartland PAR, the managing entity of Debt Fund II.

70.     The April 2019 Debt Fund II PPM disclosed fees of 15% or 20%, with the rest of the offering proceeds to be used "for the purchase of working interests in proven oil and gas wells." It did not disclose that investor funds would be used to pay interest or principal to other investors, and it falsely stated that, for Heartland's earlier oil and gas projects with TIEP, Heartland had received "production payments adequate to service its outstanding promissory notes." In fact, by this time, TIEP had defaulted on payments owed to Heartland, and Heartland PAR, Muratore, and Pearsey were using commingled Debt Fund I, Debt Fund II, and Heartland PAR funds to make Ponzi payments to other Debt Fund I and II investors.

71.     The April 2019 Debt Fund II PPM described the Conway, Wolfcamp, and Carson lease projects with Sahota, all of which were operated by Barron Petroleum, but the PPM misidentified their operator as ArcoOil. Like the Debt Fund I PPM, the April 2019 Debt Fund II PPM falsely touted Sahota's experience with ArcoOil and Leading Edge as beginning in 2003.

72.     The April 2019 Debt Fund II PPM falsely stated that the Wolfcamp lease wells had "Gross Production Per Day" of 182 barrels. Muratore or Pearsey did not research these wells on the publicly available Texas

Railroad Commission website, which showed that from January 2018 through March 2019, those wells only produced between six and 44 barrels a day. The April 2019 Debt Fund II PPM also stated that Heartland would invest in drilling up to two wells on the Carson lease, but misleadingly projected annual net revenue based on drilling ten wells on the Carson lease.

73.     Heartland's finders and feeder funds used the April 2019 Debt Fund II PPM in their solicitations of prospective investors for approximately five months, through September 2019, to raise approximately $13.7 million in funds from Debt Fund II investors. Heartland commingled the funds it raised from these Debt Fund II investors with Debt Fund I and Heartland PAR funds.

74.     Beginning at least shortly after TIEP defaulted in February 2019, Heartland PAR lacked sufficient oil and gas revenues to pay interest to Debt Fund I and II investors, and between at least March 2019 and September 2019, Heartland PAR, Muratore, and Pearsey used commingled Debt Fund I, Debt Fund II, and Heartland PAR funds to pay interest to Debt Fund I and II investors, without disclosing TIEP's default or these Ponzi payments to Debt Fund I or II investors.

75.     At Ikey's suggestion, in approximately the spring of 2019, Muratore and Pearsey hired Brunson as Heartland PAR's counsel to seek a resolution with TIEP.

76.     In all, between approximately January and September 2019,
Heartland PAR, AOS, Muratore, Pearsey, and Ikey raised approximately $22
million for Debt Fund II from approximately 240 investors through 46 finders
and the sale of feeder fund interests in 13 feeder funds. Beginning in late
summer 2019, many Debt Fund I investors, who had received their interest
payments and did not know of the Ponzi payments, renewed their investments
at maturity, left their funds with Heartland, and executed Debt Fund II
investment paperwork.

77.     At least two finders that Heartland PAR compensated for
soliciting Debt Fund II investor funds had been permanently barred by FINRA
from associating with any member firm, making those finders "bad actors,"
which precluded Heartland from relying on any Regulation D exemptions.

**Heartland PAR, Muratore, and Pearsey Ignored Red Flags Regarding
Sahota's Projects and Uses of Investor Funds**

78.     In approximately March 2019, Muratore, Pearsey, and Ikey
learned of Sahota's prior personal bankruptcies and Internet posts alleging that
Sahota had committed fraud in multiple states and Canada, including by
creating fake financial statements. In approximately April 2019, Muratore,
Pearsey, and Ikey further learned that Sahota's name was "Manjit," not
"Roger." When Muratore and Pearsey raised these findings with Sahota,
Sahota also revealed that he had previously sought to raise capital in Colorado
and had received a letter telling him to stop. Muratore and Pearsey ignored

these red flags and continued to raise additional Debt Fund II investor funds, which they used to make approximately $5.8 million in payments on the three Sahota projects from the Debt Fund I bank account between approximately March and April 2019. During this time, they also signed purchase agreements for the Carson and Wolfcamp projects, even though the lease and well descriptions were incomplete or blank.

79.     Throughout the spring of 2019, Muratore and Pearsey experienced—and ignored—additional red flags regarding Sahota, including his repeated refusal to provide requested information about title, project status, revenue, and costs. Sahota told Muratore and Pearsey that his company could spend money it received from Heartland as it wished, and that he did not have to provide details of where the funds went. He also threatened not to share well production information with Heartland or begin drilling until Heartland fully paid for its projects with Sahota.

80.     Nevertheless, by September 13, 2019, Muratore and Pearsey had directed Heartland to use investor funds to pay Sahota's companies millions of dollars for the three Sahota projects, including approximately $10.6 million to Dallas Resources and approximately $1.2 million to Barron Petroleum.

**Equity Fund I**

81.     In approximately July 2019, Heartland PAR, Muratore, and Pearsey launched Equity Fund I with a PPM that offered $6.8 million in equity

interests in the form of limited partnerships in Equity Fund I ("Equity Fund I PPM"), which purportedly would invest up to $6 million to drill new wells with Sahota on the Carson lease. Muratore, Pearsey, and Ikey all received drafts of the Equity Fund I PPM, and at least Muratore and Ikey reviewed it, before AOS sent the Equity Fund I PPM to finders and feeder fund managers, along with feeder fund PPMs that were prepared by Heartland and mirrored the Equity Fund I PPM, for use in soliciting prospective investors.

82.     The Equity Fund I PPM represented that Muratore and Pearsey were the principals and controllers of Heartland PAR, the managing partner of Equity Fund I.

83.     The Equity Fund I PPM set management fees at 3% and contained a table stating that Heartland would use 88.2% of its target $6.8 million raise on drilling costs.

84.     Between approximately July 2019 and August 2020, Heartland PAR, AOS, Muratore, Pearsey, and Ikey, and later Heartland Group Ventures, AOS, Ikey, and Brunson, with the assistance of Muratore and Pearsey, raised approximately $5 million for Equity Fund I from approximately 32 investors through finders and the sale of feeder fund interests in approximately 11 feeder funds.

**Marketing Materials for Debt Fund I, Debt Fund II, and Equity Fund I
Contained Material Misrepresentations**

85.     Beginning in at least late 2018 and throughout 2019, Ikey created
or directed AOS to create marketing materials that he distributed to finders and
feeder funds for their use in soliciting prospective investors for Debt Fund I,
Debt Fund II, and Equity Fund I. Muratore and Pearsey reviewed the
marketing materials and approved of their use.

86.     Several of the marketing materials contained misrepresentations.
For example, a "Financial Outlook" falsely stated that Heartland had 50 million
barrels of oil reserves, and a brochure advertising Heartland's debt and equity
offerings falsely claimed that Heartland's "current average production" was 228
barrels of oil a day. An "Executive Summary" advertised Heartland's
"superior" returns resulting from lean management and lack of "elevated
overhead," stating without basis that "[t]he simple transfer of property
ownership to Heartland's cost effective management and operations model has
commonly resulted in a 20% to 40% reduction in the operations expense
attributable to the assets."

87.     In April 2019, Heartland PAR hosted a finder "summit" in Texas,
during which Muratore, Pearsey, and Ikey promoted in a brochure the security
of Heartland's data in a state-of-the-art data center in Panama. They failed to
disclose that Ikey—the person who handled investor funds and accounts, had
access to investors' personal identifying information, and was Heartland's

connection to the data center in Panama—had been convicted of conspiracy to commit wire fraud in connection with a mortgage fraud scheme.

### TIEP Investor Assignments and
### September 13, 2019 Transfer of Heartland Ownership

88.     On September 13, 2019, Muratore and Pearsey executed documents that assigned their ownership of Heartland PAR, Heartland Group Ventures (which they had created the previous month), Debt Fund II, and Equity Fund I to Brunson and Ikey through Encypher Bastion (85%), which is owned and controlled by Ikey and his wife; and to Brunson Projects (15%), which is owned and controlled by Brunson. They also assigned interests in Heartland Group Venture's profits, if any, to Ikey (55%), Brunson (15%), Muratore (12.5%), Pearsey (12.5%), and another individual (5%).

89.     Just before the September 13, 2019 transfer, Muratore, Pearsey, and Ikey decided that Heartland should take on approximately $6 million in debt that TIEP owed to persons who had previously invested in promissory notes issued by TIEP, which had defaulted not only on payments owed to Heartland, but also on payments owed to its own investors. At their direction, Brunson drafted notifications to TIEP investors that Heartland was launching Debt Fund III, and if they assigned to Heartland any claims they may have against TIEP, then Heartland would treat them as Debt Fund III investors and pay them the interest owed by TIEP. On September 12, 2019, Ikey and AOS

distributed the assignments, and approximately 80 TIEP investors executed
them.

90.      Heartland received no investment funds in relation to the TIEP
investors. Nevertheless, at the direction of Ikey, Muratore, and Pearsey,
Heartland thereafter paid them interest owed by TIEP, and at the direction of
Muratore and Ikey, Heartland also paid some of the TIEP investors that
Muratore and Ikey had personally solicited to invest in TIEP their principal.
Heartland lacked sufficient oil and gas revenues to make these payments, and
the payments were initially made using commingled Debt Fund I and II
investor funds and Heartland PAR funds, and later made using commingled
investor funds from all of Heartland's offerings, Heartland PAR funds, and
Heartland Group Ventures funds, without disclosure to Debt Fund I or II
investors that their funds would be used for this purpose.

91.      Since the September 13, 2019 transfer, Ikey and Brunson have
controlled Heartland Group Ventures, with the assistance of Muratore and
Pearsey, who have acted as consultants to Heartland Group Ventures, Debt
Fund III, and Equity Funds I and II and have interacted with finders and feeder
fund managers. Ikey and Brunson ceased operating Heartland PAR and did not
raise any additional investor funds for Debt Funds I and II, ultimately
commingling those funds with funds of investors in all of Heartland's offerings
as well as Heartland PAR and Heartland Group Ventures funds.

92.     After September 13, 2019, Heartland Group Ventures, Ikey, and Brunson continued to raise funds for Equity Fund I, primarily using feeder funds to solicit prospective investors, without disclosing Ikey's or Brunson's ownership of Heartland Group Ventures. They launched two new funds, Debt Fund III and Equity Fund II, and grew Heartland's network of feeder funds. Ikey continued to control AOS, which between approximately September 13, 2019 and October 2021 performed the same responsibilities for Heartland Group Ventures and its securities offerings that it had for Heartland PAR. Heartland Group Ventures, Ikey, and Brunson continued to do business with Sahota and his companies.

93.     Since September 13, 2019, Heartland Group Ventures, AOS, Ikey, and Brunson, with continued assistance from Muratore and Pearsey, have raised approximately $73 million for Debt Fund III and approximately $21 million for Equity Funds I and II, claiming for each fund an exemption to registration under Rule 506(c) of Regulation D of the Securities Act.

### Debt Fund III

94.     The April 2019 Debt Fund II PPM served as the basis for a new PPM for Debt Fund III, dated September 27, 2019 ("Debt Fund III PPM"), although Brunson altered certain provisions in drafting it. The Debt Fund III PPM offered 1-year and 2-year promissory notes generating 8.5% and 9% monthly interest, respectively, with a stated target raise of $100 million.

Brunson circulated drafts of the Debt Fund III PPM to Ikey, Muratore, and
Pearsey before AOS sent the final PPM to finders and feeder funds, along with
feeder fund PPMs, which were prepared by Heartland and mirrored the Debt
Fund III PPM, for their use in soliciting prospective investors.

95.     The Debt Fund III PPM disclosed Heartland Group Ventures as
the manager for Debt Fund III and Brunson's ownership, but not Ikey's
majority ownership, of Heartland Group Ventures.

96.     The Debt Fund III PPM set fees at 20% of the offering proceeds,
with net proceeds to be used "to purchase leases on several different oil and gas
producing tracts along with drilling and exploration and production
operations." The PPM stated that Heartland Group Ventures also intended to
use net proceeds "to purchase some or all of the Units of Notes issued by [Debt
Fund I] and [Debt Fund II] in order to recapitalize and consolidate the
business," to "assist in the acquisition of the assets of other operating and non-
operating companies[,] which are insolvent or failing through the acquisition of
[their] debt," and for "other alternative investment strategies."

97.     The Debt Fund III PPM did not disclose that Debt Fund III
investor funds would be used to make interest payments to Debt Fund I and II
investors, whose notes had not been purchased by Debt Fund III. Heartland
Group Ventures, Ikey, and Brunson used Debt Fund III investor funds to pay

interest to Debt Fund I and II investors, without disclosure to Debt Fund I, II, or III investors of these Ponzi payments.

98.     The Debt Fund III PPM also did not disclose that Debt Fund III investor funds would be used to make interest payments to other Debt Fund III investors. To the contrary, the PPM falsely stated, "Notes issued by the Company will be serviced from the proceeds of revenues generated by the Company from its ownership in the oil and gas interests." At the time the Debt Fund III PPM was first used, oil and gas revenues had been insufficient to make interest payments owed to prior debt investors, and oil and gas revenues continued to be insufficient to make interest payments owed to Debt Fund III investors. For most of the Debt Fund III offering, Heartland Group Ventures, Ikey, and Brunson made Debt Fund III investor interest payments using other Debt Fund III investor funds, which were commingled with funds of Debt Funds I and II, Heartland PAR, and Heartland Group Ventures shortly after September 13, 2019, without disclosing these Ponzi payments to Debt Fund III investors.

99.     The Debt Fund III PPM did not specifically disclose the TIEP investor assignments, interest payments, or principal payments—or Ikey's, Muratore's, and Pearsey's role in soliciting investors for TIEP—even though AOS and Ikey had already distributed the assignments by the time the Debt Fund III offering began.

100.    The Debt Fund III PPM described the Conway, Wolfcamp, and Carson lease projects with Sahota, all of which were operated by Barron Petroleum, but the PPM falsely listed both Barron Petroleum and ArcoOil as their operators. The Debt Fund III PPM falsely touted Sahota's experience with Barron Petroleum, ArcoOil, and Leading Edge as beginning in 2003, even though Texas Secretary of State records show that Barron Petroleum was formed in 2017, like the other two companies. The Debt Fund III PPM also displayed the same false production figures for the fourteen wells on the Wolfcamp lease and misleading projections for the Carson lease as in the April 2019 Debt Fund II PPM. Ikey and Brunson did not research these wells or operators on the publicly available Texas Railroad Commission website.

101.    Ikey suggested that Debt Fund III invest more than $490,000 in jade and land in Guatemala, and Brunson agreed. Ikey did not disclose to Brunson that years before, Ikey had convinced others to invest in a failed Guatemalan jade investment and owed those investors money. Nor did Ikey disclose that his business partner in the failed jade deal, to whom he owed money, controlled the servers in Panama where Heartland investor data was kept.

102.    Between approximately September 13, 2019 and October 2021, Heartland Group Ventures, AOS, Ikey, and Brunson, with assistance from Muratore and Pearsey, have raised approximately $73 million for Debt Fund III

from approximately 607 investors through finders and the sale of feeder fund interests in approximately 54 feeder funds. Many Debt Fund III investors were former Debt Fund I and/or Debt Fund II investors, who had received their interest payments and did not know of the Ponzi payments, renewed their investments at maturity, left their funds with Heartland, and executed Debt Fund III investment paperwork. Other Debt Fund III investors made multiple Debt Fund III investments after having received their interest payments on their initial Debt Fund III investments without knowing they were Ponzi payments.

103.    Heartland Group Ventures, AOS, Ikey, and Brunson made no inquiry into whether the feeder funds who solicited investors for Debt Fund III qualified as accredited investors. At least one feeder fund manager that Heartland Group Ventures compensated for soliciting investor funds for Debt Fund III had been permanently barred by FINRA from associating with any member firm, making the feeder fund manager a "bad actor," which precluded Heartland from relying on any Regulation D exemptions.

### Equity Fund II

104.    Heartland Group Ventures, Ikey, and Brunson, with assistance from Muratore and Pearsey, began raising funds for Equity Fund II in approximately August 2020. The Equity Fund I PPM formed the basis for a new PPM, with certain alterations by Brunson, that offered equity interests in

the form of limited partnerships in Equity Fund II ("Equity Fund II PPM"),

purportedly to drill additional wells on the Carson lease in Val Verde County.

105.    The Equity Fund II PPM listed Heartland Group Ventures as the

managing partner of Equity Fund II and stated that Brunson controlled

Heartland Group Ventures, with the advice and counsel of Muratore and

Pearsey. It did not disclose Ikey or his majority ownership and control of

Heartland Group Ventures. Brunson circulated the draft Equity Fund II PPM to

Ikey, Muratore, and Pearsey before AOS sent the final PPM to finders and

feeder funds, along with feeder fund PPMs, which were prepared by Heartland

and mirrored the Equity Fund II PPM, for their use in soliciting prospective

investors.

106.    The Equity Fund II PPM set management fees at 20% and

contained a table stating that Heartland would use 80% of its target $24 million

raise on drilling costs.

107.    Between approximately August 2020 and September 2021,

Heartland raised approximately $16 million for Equity Fund II from

approximately 143 investors through finders and the sale of feeder fund interests

in approximately 35 feeder funds.

108.    Heartland Group Ventures, AOS, Ikey, and Brunson made no

inquiry into whether the feeder funds who solicited investors for Equity Fund II

qualified as accredited investors. At least one feeder fund manager that

40

Heartland Group Ventures compensated for soliciting investor funds for Equity Fund II had been permanently barred by FINRA from associating with any member firm, making the feeder fund manager a "bad actor," which precluded Heartland from relying on any Regulation D exemptions.

### Marketing Materials for Debt Fund III and Equity Funds I and II Contained Material Misrepresentations and Omissions

109.    At Ikey's direction, AOS created marketing materials for Heartland Group Ventures in at least 2020 and 2021 that Ikey or AOS distributed to feeder fund managers for use in soliciting both debt and equity investors. Ikey knew and approved of their use.

110.    Several of these marketing materials contained misrepresentations and omissions. For example, the 2020 and 2021 brochures advertising Heartland's debt and equity offerings failed to disclose Ikey as part of "The Team," instead listing only Muratore, Pearsey, and Brunson. They described as Heartland's chief engineering consultant the mechanical engineer Heartland PAR had hired in 2019, even though he performed no work for Heartland in 2020 or 2021. They falsely claimed that Heartland's current projects included the two wells with TIEP, long after TIEP's default.

111.    On approximately September 16, 2019, with Ikey's knowledge, AOS emailed feeder funds a newsletter announcing that drilling had started on the Carson lease in Val Verde County, Texas, and stating, "[w]e expect to have this well completely drilled and producing oil in the next 25 days." The Carson

lease wells are natural gas wells, not oil wells. Also, although two gas wells were eventually drilled on the Carson lease in Val Verde County, nearly a year was spent connecting them to a pipeline.

112.    Heartland Group Ventures finally announced that "Carson drilling Fund I is officially online and selling gas" in a May 17, 2021 newsletter that Ikey saw before AOS emailed it to feeder fund managers. In August 2021, on the basis of approximately $5,000 in total revenue for the Carson lease gas wells, Heartland Group Ventures distributed its first payments to Equity Fund I investors of approximately $5 to $10 per investor. Ikey thereafter directed AOS staffers to create and distribute a newsletter to investors defending the project and Sahota. None of the Carson lease-related newsletters disclosed to investors that, since their completion in May 2021, the two Carson lease wells in Val Verde County have produced a combined total of no more than 500 mcf of gas per month.

### Heartland Group Ventures, Ikey, and Brunson Ignored Red Flags Regarding Sahota's Projects and Uses of Investor Funds

113.    After the September 13, 2019 transfer of Heartland ownership, Heartland Group Ventures experienced problems with Sahota, including project delays and large, unexpected costs, including to build a multi-million dollar pipeline that was purportedly necessary to reach the Carson wells.

114.    Beginning in approximately spring 2020, Heartland Group Ventures spent months attempting to track amounts Sahota had charged

Heartland and tie them to actual costs incurred. Sahota repeatedly refused to send Heartland copies of his invoices, which would have enabled Heartland to determine how Sahota had used investor monies and whether Sahota paid for his 51% of costs.

115.    From approximately February 2019 to September 2021, revenue from the Sahota projects amounted to less than $300,000, although Sahota has continually promised Heartland and its principals that production was right around the corner.

116.    Nevertheless, Heartland Group Ventures, Ikey, and Brunson continued to ignore these red flags, raise additional Debt Fund III and Equity Fund I and II investor funds, and transfer investor funds to Sahota's companies for the three Sahota projects. Between approximately September 13, 2019 and October 2021, they had directed Heartland to use investor funds to pay Sahota's companies ArcoOil and Barron Petroleum more than $40 million.

**Sahota Made Misrepresentations to Heartland and Its Investors**

117.    In approximately mid-2019, after TIEP's default, Muratore and Pearsey asked Sahota to pay Heartland PAR directly for production relating to the two wells described in the Debt Fund I PPM, since Sahota's company, ArcoOil, was the operator of those wells. Sahota falsely told Muratore and Pearsey that the wells were shut in, meaning closed off and not producing. Sahota did not disclose that he had completed one of the wells in April 2019 or

that it had started producing oil (albeit no more than 2 barrels a month), nor did he share production revenue with Heartland.

118.    In approximately January 2020, Brunson requested from Sahota a reserve report for the Carson lease for the stated purpose of sharing the report with Heartland's investors. In response, Sahota sent him a one-page reserve report, written by a petroleum geologist, that showed $146 million worth of gas reserves for the Carson lease. Heartland Group Ventures and AOS distributed that report to feeder fund managers and investors. Unbeknownst to Brunson, that report had been fraudulently altered. The report's author had written a similar report and provided it Sahota, but his report did not include a projected dollar figure for the recoverable gas.

119.    Beginning in at least January 2020, Sahota sent Brunson documents that purported to be monthly statements from a gathering company that purchases oil from the Wolfcamp lease wells. The statements had been altered from the original versions, which were sent to the Sahota Defendants, to show inflated or otherwise altered oil production revenues.

120.    In April 2021, Sahota personally made misrepresentations to at least one investor, Heartland personnel, and feeder fund managers who solicited investments for Debt Fund III and Equity Fund II. That month, during a "field trip" to a gas well being drilled on the Carson lease, Sahota falsely told attendees that the first well drilled would initially produce 4 million mcf of gas

per day. In reality, that well has produced no more than 7 mcf of gas per day since it started producing gas in approximately May 2021.

121.     Sahota's misrepresentations kept Heartland investor funds flowing to his companies, including ArcoOil, Barron Petroleum, and Dallas Resources, which have received in excess of $54 million of Heartland funds for the Conway, Wolfcamp, and Carson lease projects since approximately February 2019. Heartland funds have comprised at least 80% of incoming funds for Sahota's entities.

122.     During the period in which Sahota and his companies received these funds, Sahota used some of the funds for oil and gas-related expenses but also spent millions on a private jet, helicopter, real estate in the Bahamas, and other personal expenses. He often paid for these non-oil and gas expenses immediately after receiving funds from Heartland. In several instances, Sahota would have been unable to make the purchases without Heartland investor funds, including the private jet, helicopter, and real estate in the Bahamas, of which approximately $1.4 million, $1.8 million, and $600,000, respectively, is traceable to Heartland investor funds.

### Heartland Accepted Funds from Unaccredited Investors

123.     Debt Funds I, II, and III and Equity Funds I and II each claimed a registration exemption under Rule 506(c) of Regulation D of the Securities Act.

But Heartland PAR and Heartland Group Ventures accepted millions of dollars from more than 100 unaccredited investors across those five offerings.

124.    Heartland failed to take reasonable steps to verify accredited investor status at the time its securities were offered and sold. For investors solicited by finders, Heartland PAR, AOS, Muratore, Pearsey, and Ikey relied on investors to self-report their accredited status by checking a box on their investor agreements, and on finder submissions of undated form letters purporting to certify investor accredited status. The form letters lacked contact information for follow-up purposes, and some failed to so much as identify the investor.

125.    As for investors solicited by feeder funds, Heartland PAR, Heartland Group Ventures, AOS, Ikey, Muratore, Pearsey, and Brunson made no inquiry into whether the feeder funds qualified as accredited investors. Numerous feeder funds—and the investors they solicited—were unaccredited.

126.    Internal Heartland documents reflect that Heartland owed $21,685,318.07 to unaccredited investors as of September 7, 2021.

127.    Heartland also paid compensation for solicitations of investor funds for Debt Funds I, II, and III and Equity Fund II to persons who had previously been permanently barred by FINRA from associating with any member firm. These FINRA bars, which are public, made the barred persons "bad actors," and therefore made Heartland PAR a "bad actor" for purposes of

Debt Funds I and II and Heartland Group Ventures a "bad actor" for purposes of Debt Fund III and Equity Fund II. "Bad actor" status disqualifies reliance on any exemption from registration under Regulation D of the Securities Act, including Rule 506(c) of Regulation D, the provision under which Heartland claimed an exemption from registration for Debt Funds I, II, and III and Equity Fund II. In 2021, Heartland Group Ventures terminated multiple feeder fund managers it had determined were "bad actors."

### Heartland's Use—and Misuse—of Investor Funds

128.    Since October 2018, Heartland bank accounts have received more than $124 million from all sources, including more than $122 million (98.5% of all incoming funds) from investors in its offerings: a total of approximately $101 million from Debt Fund I, II, and III investors and a total of approximately $21 million from Equity Fund I and II investors.

129.    The Equity Fund I PPM specifically stated that at least 88.2% of investor funds raised would be used for drilling costs, and the April 2019 Debt Fund II PPM represented that 80%-85% of investor funds raised would be used for oil and gas investments, based on its fee disclosures of 15% or 20%. But Heartland was spending less than 80% of investor funds raised on purported oil and gas investments when those PPMs were first used, sinking under 80% by April 30, 2019 and under 70% by June 30, 2019. Overall, since October 2018, Heartland has spent only approximately $61.6 million, about half of the $122

million of investor funds raised, on purported oil and gas investments, including approximately $54 million on the Carson, Wolfcamp, and Conway projects with Sahota; approximately $5 million on the Sahota 1 and 2 wells with TIEP; and approximately $2 million on other oil and gas investments.

130.    Lacking sufficient oil and gas revenues to meet their obligations to debt fund investors, the Heartland Defendants have used commingled investor funds to make Ponzi payments of more than $26 million, about 22% of investor funds raised, to debt fund investors. Between at least March and September 2019, Muratore and Pearsey directed Heartland PAR to use commingled Debt Fund I, Debt Fund II, and Heartland PAR funds to make payments to Debt Fund I and II investors without disclosing these Ponzi payments to Debt Fund I and II investors. Since shortly after the September 13, 2019 transfer of ownership, Ikey and Brunson have directed Heartland Group Ventures to make payments to Debt Fund I, II, and III investors using commingled investor funds, Heartland PAR funds, and Heartland Group Ventures funds, without disclosing these Ponzi payments to Debt Fund I, II, or III investors.

131.    Additionally, since at least September 13, 2019, Ikey, Muratore, and Pearsey have directed Heartland Group Ventures to make conflict-ridden interest or principal payments to non-Heartland investors who made failed investments in TIEP using commingled investor funds and Heartland PAR and

Heartland Group Ventures funds, without disclosing to Debt Fund I or II investors that their funds would be used for this purpose.

132.    Ikey directed Heartland Group Ventures to spend more than $490,000 on conflict-ridden investments in jade and land in Guatemala, without disclosing those conflicts to Brunson.

133.    Between approximately November 2019 and September 2021, at Ikey's direction, Heartland Group Ventures paid $40,000 per month, for a total of about $908,000, to Encypher Bastion, an Ikey-controlled entity that performs no work for Heartland. This money appears to serve no purpose other than to enrich Ikey at investors' expense.

134.    In addition to the $908,000 in payments to Encypher Bastion, Heartland PAR and Heartland Group Ventures have paid Ikey's entity, AOS, approximately $11 million since October 2018. At the direction of Muratore and Pearsey, Heartland PAR paid AOS a fee of 1.5% of investor funds raised between approximately October 2018 and September 13, 2019, and a $100,000 bonus for the September 13, 2019 transfer of ownership. After the transfer, using his majority control of Heartland Group Ventures, Ikey increased his compensation, directing Heartland Group Ventures to pay AOS a fee of 4% of investor funds raised for approximately one year, and subsequently $137,000 a month through approximately September 2021.

135.     Since October 2018, Muratore, through his company Muratore
Financial Services, and Pearsey have each received compensation of
approximately $2.5 million from Heartland.

136.     Since September 2019, Brunson has received compensation of
approximately $939,000 from Heartland.

137.     Since October 2018, Heartland PAR, at the direction of Muratore
and Pearsey, and Heartland Group Ventures, at the direction of Ikey and
Brunson, have paid finders and feeder fund managers at least $3.6 million in
direct payments for soliciting investors. Feeder fund managers received
additional compensation in the form of the cut of investor funds they kept
before sending the rest to Heartland.

### Recent Developments

138.     In October 2021, at the direction of Brunson, Heartland Group
Ventures ceased raising investor funds for Debt Fund III and Equity Fund II
and ceased making payments to the Sahota Defendants.

139.     In October 2021, Sahota launched an unregistered offering of what
he called "BARR Tokens" through Barron Energy and Barron Petroleum. The
marketing materials for that offering state that from 2017 to 2020, Barron
Petroleum invested $200 million "of its own money" acquiring oil and gas
properties and drilling wells that match the description of Sahota's projects with

Heartland, and for which approximately $54 million of Heartland investor funds were used.

## COUNT I

### Violations of Section 17(a) of the Securities Act

### (Against the Heartland Entities; AOS; the Sahota Defendants; James Ikey; John Muratore; and Thomas Brad Pearsey)

140.     Paragraphs 1 through 139 are realleged and incorporated by reference as though fully set forth herein.

141.     By engaging in the conduct described above, Defendants the Heartland Entities, AOS, the Sahota Defendants, Ikey, Muratore, and Pearsey, in the offer and sale of securities, by the use of the means and instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, have (a) employed devices, schemes, and artifices to defraud; (b) obtained money and property by means of untrue statements of material fact and by omitting to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, practices, and courses of business which operated or would operate as a fraud or deceit upon the purchasers of such securities.

142.     Defendants the Heartland Entities, AOS, the Sahota Defendants, Ikey, Muratore, and Pearsey each acted knowingly, or with severe recklessness, in engaging in the conduct described above.

51

143.     Defendants the Heartland Entities, AOS, the Sahota Defendants, Ikey, Muratore, and Pearsey each also acted negligently in engaging in the conduct described above.

144.     By engaging in the conduct described above, Defendants the Heartland Entities, AOS, the Sahota Defendants, Ikey, Muratore, and Pearsey each violated Sections 17(a)(1), 17(a)(2), and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(1), 77q(a)(2), and 77q(a)(3)].

## COUNT II

### Violations of Section 17(a)(2) and 17(a)(3) of the Securities Act

### (Against Rustin Brunson)

145.     Paragraphs 1 through 139 are realleged and incorporated by reference as though fully set forth herein.

146.     By engaging in the conduct described above, Defendant Brunson, in the offer and sale of securities, by the use of the means and instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, has (a) obtained money and property by means of untrue statements of material fact and by omitting to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; and (b) engaged in transactions, practices, and courses of business which operated or would operate as a fraud or deceit upon the purchasers of such securities.

147.    Defendant Brunson acted negligently in engaging in the conduct described above.

148.    By engaging in the conduct described above, Defendant Brunson violated Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)].

## COUNT III

### Violations of Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5

### (Against the Heartland Entities; AOS; the Sahota Defendants; James Ikey; John Muratore; and Thomas Brad Pearsey)

149.    Paragraphs 1 through 139 are realleged and incorporated by reference as though fully set forth herein.

150.    By engaging in the conduct described above, Defendants the Heartland Entities, AOS, the Sahota Defendants, Ikey, Muratore, and Pearsey, in connection with the purchase and sale of securities, by the use of the means and instrumentalities of interstate commerce and by the use of the mails, directly and indirectly: used and employed devices, schemes, and artifices to defraud; made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and engaged in acts, practices, and courses of business which operated or would have operated as a fraud and deceit upon purchasers and sellers and prospective purchasers and sellers of securities.

151.    Defendants the Heartland Entities, AOS, the Sahota Defendants, Ikey, Muratore, and Pearsey each acted knowingly, or with severe recklessness, in engaging in the conduct described above.

152.    By engaging in the conduct described above, Defendants the Heartland Entities, AOS, the Sahota Defendants, Ikey, Muratore, and Pearsey violated Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5].

## COUNT IV

### Violations of Section 5(a) and (c) of the Securities Act

### (Against the Heartland Defendants and AOS)

153.    Paragraphs 1 through 139 are realleged and incorporated by reference as though fully set forth herein.

154.    Section 5(a) of the Securities Act provides that unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or directly, (1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or (2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale.

155.    Section 5(c) of the Securities Act provides that it shall be unlawful for any person, directly or indirectly, to make use of any means or instruments

54

of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under section 77h of the Securities Act.

156.     No registration statement had been filed or was in effect for any of the securities offered and sold by the Heartland Defendants and AOS, and no exemption applied. The Heartland Defendants and AOS, by engaging in the conduct described above, directly or indirectly, made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or to sell such securities.

157.     By reason of the foregoing, the Heartland Defendants and AOS violated Section 5(a) and (c) of the Securities Act [15 U.S.C. §§ 77e(a) and (c)].

**COUNT V**

**Aiding and Abetting Violations of Section 17(a) of the Securities Act**

**(Against the Heartland Entities; AOS; the Sahota Defendants;
James Ikey; John Muratore; and Thomas Brad Pearsey)**

158.     Paragraphs 1 through 139 are realleged and incorporated by reference as though fully set forth herein.

159.     By engaging in the conduct described above, Defendants the Heartland Entities, AOS, the Sahota Defendants, Ikey, Muratore, and Pearsey,

in the offer and sale of securities, by the use of the means and instruments of
transportation or communication in interstate commerce or by use of the mails,
directly or indirectly, have (a) employed devices, schemes, and artifices to
defraud; (b) obtained money and property by means of untrue statements of
material fact and by omitting to state material facts necessary to make the
statements made, in light of the circumstances under which they were made, not
misleading; and (c) engaged in transactions, practices, and courses of business
which operated or would operate as a fraud or deceit upon the purchasers of
such securities.

160.    By engaging in the conduct described above, Defendants the
Heartland Entities, AOS, the Sahota Defendants, Ikey, Muratore, and Pearsey
violated Sections 17(a)(1), 17(a)(2), and 17(a)(3) of the Securities Act [15 U.S.C.
§§ 77q(a)(1), 77q(a)(2), and 77q(a)(3)].

161.    Defendants the Heartland Entities, AOS, the Sahota Defendants,
Ikey, Muratore, and Pearsey knowingly or recklessly provided substantial
assistance to other Defendants. Thus, they aided and abetted the violations of
Section 17(a) of the Securities Act and, pursuant to Section 15(b) of the
Securities Act [15 U.S.C. § 77o(b)], such Defendants are liable to the same
extent as those Defendants who directly violated Section 17(a) of the Securities
Act.

## COUNT VI

**Aiding and Abetting Violations of Section 10(b) of the Exchange Act,
and Exchange Act Rule 10b-5**

**(Against the Heartland Entities; AOS; the Sahota Defendants;
James Ikey; John Muratore; and Thomas Brad Pearsey)**

162.    Paragraphs 1 through 139 are realleged and incorporated by reference as though fully set forth herein.

163.    By engaging in the conduct described above, Defendants the Heartland Entities, AOS, the Sahota Defendants, Ikey, Muratore, and Pearsey, in connection with the purchase and sale of securities, by the use of the means and instrumentalities of interstate commerce and by the use of the mails, directly and indirectly: used and employed devices, schemes, and artifices to defraud; made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and engaged in acts, practices, and courses of business which operated or would have operated as a fraud and deceit upon purchasers and sellers and prospective purchasers and sellers of securities.

164.    Defendants the Heartland Entities, AOS, the Sahota Defendants, Ikey, Muratore, and Pearsey knowingly or recklessly provided substantial assistance to other Defendants. Thus, they aided and abetted the violations of Section 10(b) and Rule 10b-5 of the Exchange Act and, pursuant to Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)], such Defendants are liable to the

same extent as those Defendants who directly violated Section 10(b) and Rule 10b-5 of the Exchange Act.

## COUNT VII

### Aiding and Abetting Violations of Section 5(a) and (c) of the Securities Act

### (Against the Heartland Defendants and AOS)

165.    Paragraphs 1 through 139 are realleged and incorporated by reference as though fully set forth herein.

166.    As set forth above, no registration statement had been filed or was in effect for any of the securities offered and sold by the Heartland Defendants and AOS, and no exemption applied. The Heartland Defendants and AOS, by engaging in the conduct described above, directly or indirectly, made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or to sell such securities. By reason of the foregoing, the Heartland Defendants and AOS violated Section 5(a) and (c) of the Securities Act [15 U.S.C. §§ 77e(a) and (c)].

167.    The Heartland Defendants and AOS knowingly or recklessly provided substantial assistance to other Defendants. Thus, they aided and abetted the violations of Section 5(a) and (c) of the Securities Act and, pursuant to Section 15(b) of the Securities Act [15 U.S.C. § 77o(b)], such Defendants are liable to the same extent as those Defendants who directly violated Section 5(a) and (c) of the Securities Act.

## COUNT VIII

### Equitable Claim With Respect to Relief Defendants

**(Against Dodson Prairie Oil & Gas LLC;
Panther City Energy LLC; Muratore Financial Services, Inc.;
Bridy Ikey; Encypher Bastion, LLC; IGroup Enterprises LLC;
Harprit Sahota; Monrose Sahota; Sunny Sahota;
Barron Energy Corporation; Dallas Resources Inc.;
Leading Edge Energy, LLC; Sahota Capital LLC; and 1178137 B.C. LTD.)**

168.    Paragraphs 1 through 139 are realleged and incorporated by reference as though fully set forth herein.

169.    Relief Defendants, directly or indirectly, received funds or benefited from the use of such funds, which are the proceeds, or are traceable to the proceeds, of Defendant's unlawful activity alleged in paragraphs 1 through 139.

170.    Relief Defendants have no legitimate claim to these funds that they received or from which they otherwise benefited, directly or indirectly.

171.    Based upon the allegations set forth above, the Relief Defendants have been unjustly enriched by their direct or indirect receipt of or benefit from investor funds.

172.    The Commission is entitled to an order requiring the Relief Defendants to disgorge all of the proceeds of investor funds they received or from which they benefited, either directly or indirectly.

## RELIEF REQUESTED

**WHEREFORE,** the Commission respectfully requests that this

Court:

### I.

Permanently enjoin Defendants the Heartland Entities, AOS, the Sahota

Defendants, Ikey, Muratore, and Pearsey, their officers, agents, servants,

employees, attorneys, and those persons in active concert or participation with

Defendants the Heartland Entities, AOS, the Sahota Defendants, Ikey,

Muratore, and Pearsey who receive actual notice of the order of this Court, by

personal service or otherwise, and each of them from, directly or indirectly,

engaging in the transactions, acts, practices, or courses of business described

above, or in conduct of similar purport and object, in violation of Section 17(a)

of the Securities Act [15 U.S.C. § 77q(a)] and Section 10(b) of the Exchange Act

[15 U.S.C. § 78j] and Rule 10b-5 [17 CFR § 240.10b-5] thereunder;

Permanently enjoins Defendant Rustin Brunson, his officers, agents,

servants, employees, attorneys, and those persons in active concert or

participation with Defendant Brunson who receive actual notice of the order of

this Court, by personal service or otherwise, and each of them from, directly or

indirectly, engaging in the transactions, acts, practices, or courses of business

described above, or in conduct of similar purport and object, in violation of

Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)]; and

Permanently enjoins the Heartland Defendants and AOS, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with the Heartland Defendants and Defendant AOS who receive actual notice of the order of this Court, by personal service or otherwise, and each of them from, directly or indirectly, engaging in the transactions, acts, practices, or courses of business described above, or in conduct of similar purport and object, in violation of Section 5(a) and (c) of the Securities Act [15 U.S.C. §§ 77e(a) and (c)].

## II.

Permanently enjoin Defendants, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with Defendants who receive actual notice of the order of this Court, by personal service or otherwise, and each of them from, directly or indirectly, participating in the issuance, purchase, offer, or sale of any security related to the production, exploration, extraction, purchase, or sale of oil or gas, provided, however, that such injunction shall not prevent any of Defendants Ikey, Muratore, Pearsey, Brunson, or Sahota from purchasing or selling securities listed on a national securities exchange for their own personal accounts.

## III.

Permanently bars each of Defendants Ikey, Muratore, Pearsey, and Sahota from serving as an officer or director of any company that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78*l*] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)], pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.S. § 78u(d)(2)].

## IV.

Orders Defendants to disgorge the ill-gotten gains received because of the violations alleged in this Complaint, including prejudgment interest, pursuant to Section 21(d)(5) and 21(d)(7) of the Exchange Act [15 U.S.C. §§ 78u(d)(5), and 78u(d)(7)].

## V.

Orders Defendants to pay civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

## VI.

Enters an Order requiring Relief Defendants Dodson Prairie Oil & Gas LLC; Panther City Energy LLC; Muratore Financial Services, Inc.; Bridy Ikey; Encypher Bastion, LLC; IGroup Enterprises LLC; Harprit Sahota; Monrose Sahota; Sunny Sahota; Barron Energy Corporation; Dallas Resources Inc.;

Leading Edge Energy, LLC; Sahota Capital LLC; and 1178137 B.C. LTD. to disgorge all funds they received from Defendants' ill-gotten gains or by which they have been unjustly enriched, including all investor funds transferred to them or used for their benefit, wherever located, including jurisdictions outside of the United States, including prejudgment interest thereon.

## VII.

Grant such other relief as this Court deems appropriate.

## JURY DEMAND

The Commission hereby requests a trial by jury.

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION

By: _____
Jonathan S. Polish

Jonathan S. Polish (IL Bar No. 6237890)
*pro hac vice pending*
Stephanie L. Reinhart (IL Bar No. 6287179)
*pro hac vice pending*
**UNITED STATES SECURITIES
AND EXCHANGE COMMISSION**
175 W. Jackson Blvd., Suite 1450
Chicago, Illinois 60604
(312) 353-6884 (Polish)
PolishJ@SEC.gov
(312) 886-9899
ReinhartS@SEC.gov

Keefe Bernstein (Texas Bar No. 24006839)
**UNITED STATES SECURITIES
  AND EXCHANGE COMMISSION**
801 Cherry Street, Suite 1900
Fort Worth, Texas 76102
(817) 900-2607
BernsteinK@sec.gov

Dated: December 1, 2021